### IND. COMM. v MILLER et

Ohio Appeals, 2nd Dist, Franklin Co
No. 2058. Decided July 8, 1931

D. J. Hoskins, Eugene Carlin and J. E. Bowman, Columbus, for Indus. Comm.

T. J. Abernethy and T. J. Duffy. Columbus, for Miller et.

HORNBECK, J.

The defendant Commission complains of the verdict and judgment under three headings: First, in the determination that the alleged injury was sustained in the course of employment. Second, in finding that there was any connection between the alleged injury and cause of death. Third. claims that the evidence discloses that the death of Miller was caused by his improper mode of living, viz, excessive use of intoxicating liquor.

Respecting the first claim, it may be gleaned from the record, although not in the form of the best evidence, which would have been the records of defendant. that the Commission, soon after August 19, 1926, the date of the alleged injury, made an award to Miller as a basis of which it was necessary to find that he was injured in the course of his employment and that such injury was compensable. This, in our judgment, is effective to bar the Commission from questioning the claim that Miller was

injured in the course of his employment, unless fraud was interposed as a defense, which was not alleged and does not appear.

The trial court refused the testimony of Mr. Albert Lucas, who was a fellow workman with Miller, and who testified that on the day that Miller was injured, and while yet appearing sick, Miller explained how he was injured. The court permitted the testimony of Mrs. Miller respecting what her husband told her as to the happening of the accident resulting in the injury complained of at some time subsequent to the accident, the time of such statement not appearing. If either of these statements is admissible it must be on the basis that they were part of the res gestae.

It is to be regretted that the time when these statements were made was not more definitely fixed. It seems reasonable, however, that the earliest time that the statement could have been made to Mrs. Miller must have been hours after Miller's fall and this made the statement a recital of a past occurrence and not admissible. The narration of the facts to Mr. Lucas, while Miller's appearance indicated that he was still suffering from the immediate effects of the fall, as shown by his physical appearance, would seem to place it in such relation to the injury as to bring it within the class of spontaneous expressions connected therewith, and therefore part of the res gestae, and we believe it admissible as such. In view of the fact that the statements to Mr. Lucas and to his wife were substantially the same, and one was improperly refused and the other improperly admitted, the jury had only before it the substance of such evidence as it was entitled to receive and hear, and therefore no prejudice could have resulted to the defendant commission by the action of the court.

In this connection it should be observed that this record is most incomplete in the meager presentation of the facts essential to a proper knowledge of the case. The only source of information concerning the action of the Commission on the claim of Louis Miller for compensation is found in the testimony of two lay witnesses, and necessarily is of the most general character. The original record, with specific information on all of the facts which was proper that the jury should have before it, was available and should have been spread upon the record. Likewise, the evidence does not disclose with particularity, which could no doubt have been easily shown, what the specific duties of Miller were in the plant in which he was working. Although the case is predicated upon the fall of a wheelbarrow upon Miller, the record does not disclose that it was his duty to push a wheelbarrow loaded with salt up a plank; neither does it definitely appear at what time respecting the accident he had the conversation with Mr. Lucas, a fellow workman. Lucas does say that Miller told him he fell off a plank when he had pushed a wheelbarrow nearly to the top of it.

It would seem that Lucas could have told how long before the time he had talked to Mr. Miller respecting his accident, he, Lucas, had seen Miller, and thus give the court and jury the benefit of knowledge which would make it simpler to apply the rules of evidence respecting Lucas' testimony.

On the second proposition in which it is claimed there is connection between the old injury and cause of death, a fair inference to be drawn from such admitted evidence as is competent, is that Miller fell from the plank while walking up it, transporting salt, and that he struck his knee and his hip. The evidence is not definite to support the claim that he was injured when he was 14 years of age in the hip which was struck at the time of the alleged injury, but it does appear that he had such prior injury seriously affecting the hip joint. It is also testified by Dr. Teachnor that if the fall on the hip injured the periosteum that it could, and probably would, light up a former condition which, if tubercular, might spread through the blood stream to the meninges and cause meningeal tuberculosis. He also explained that X-rays were taken in which it did not appear that there was any injury to the hip socket. He explained, however, that an X-ray would not show all parts injured which could result from such a fall as it was claimed Miller sustained.

Dr. Albert Trachauer, who attended Mr. Miller soon after the injury of August 19, 1926, testifies that there was injury to the hip joint and that in his judgment this was a lasting injury. At page 13 he says that the injury was at the hip, there was a contusion from the hip down the leg.

Dr. W. H. Cleveland, in answer to a hypothetical question, properly lays the basis for the verdict of the jury, in which he says that "the immediate cause of death was meningeal tuberculosis, the remote cause was infection possibly, probably, in one of his injured joints." This supplemented the theory of Dr. Teachnor that a lighting up of a tubercular condition in the hip joint could result in meningeal tuberculosis. There was support for the plaintiff's claim in the fact that the trouble occasioned by the injury to Mr. Miller on August 19, 1926, was protracted almost continuously from that date until his death.

Finally it is claimed that in all proba-

bility Mr. Miller's death was caused by the excessive use of alcohol. The record, in our judgment, will not support such a conclusion. There is not a syllable of testimony to the effect that meningeal tuberculosis would be a probable result of excessive drinking if the record would support a finding to this effect.

Neither does it appear that Miller was an excessive drinker prior to the time of his injury, or that such drinking that he may have then engaged in seriously affected his ability to labor regularly.

The judgment of the trial court will be affirmed.

ALLREAD, PJ and LEVINE, J, (8th Dist), sitting, concur.